UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN VILLARREAL,

                Plaintiff,        Civil Action No. 13-15197
                                     Honorable Marianne O. Battani
                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 12]**

Plaintiff John Villarreal ("Villarreal") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 12] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Villarreal was not disabled under the Act during the closed period at issue. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Villarreal's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On June 15, 2011, Villarreal filed an application for DIB, alleging a disability onset date of August 17, 2009. (Tr. 135-41). This application was denied initially on September 19, 2011. (Tr. 83-86). Villarreal filed a timely request for an administrative hearing, which was held on September 7, 2012, before ALJ Paul Jones.[1] (Tr. 25-63). Villarreal, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Carrie Anderson. (*Id.*). On September 28, 2012, the ALJ issued a written decision finding that Villarreal was not disabled during the relevant period of time. (Tr. 16-21). On October 23, 2013, the Appeals Council denied review. (Tr. 1-3). Villarreal filed for judicial review of the final decision on December 20, 2013. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

---

[1] At the hearing, Villarreal made clear that he is seeking DIB for a closed period, from August 17, 2009, to March 9, 2012. (Tr. 28).

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

    *1.     Plaintiff's Reports and Testimony*

At the time of the administrative hearing, Villarreal was 48 years old.  (Tr. 34).  He lived in a house with his wife.  (Tr. 35, 164).  He testified that he was 6'2" tall and weighed 245 pounds.  (Tr. 31).  He graduated from high school and subsequently earned a journeyman's card in tool and die making.  (Tr. 36-37, 158-59).  Villarreal worked at General Motors as a tool and die maker for more than twenty years.  (Tr. 42, 159).  He testified that, on August 17, 2009, he "got in an argument with [his] boss" and was fired.[2]  (Tr. 46).  After his employment was terminated, he applied for unemployment benefits – representing that he was ready, willing, and able to work – but his application was denied.  (Tr. 39-40).  In March 2012, after filing and

---

[2] On a June 16, 2011, disability report, however, Villarreal reported that he stopped working because of his medical condition.  (Tr. 158).

pursuing a union grievance challenging his termination from General Motors, Villarreal's employment was reinstated. (Tr. 48-49). Consequently, Villarreal now seeks DIB for a closed period, from August 17, 2009, to March 9, 2012. (Tr. 28).

Villarreal alleges that right knee pain prevented him from working during the relevant time period. (Tr. 31). He had arthroscopic surgery performed twice on that knee, once in 1996 and again in 2003. (Tr. 31-32). He testified that, during the relevant period, he took over-the-counter Motrin and Tylenol for his pain.[3] (Tr. 33). At that time, his pain was "dull" but "constant," ranging from a 7/10 to a 10/10 on the pain scale. (Tr. 56, 60). He testified that he could sit for 25 minutes, stand for 8-10 minutes, and walk one city block during the relevant period. (Tr. 59-60). He could not squat down to pick up objects off the floor, nor could he climb stairs. (Tr. 60). However, he was able to attend to his own personal care, care for his dog, prepare meals, do light chores, drive, and go grocery shopping. (Tr. 165-67).

    2.    *Medical Evidence*

The Court has thoroughly reviewed Villarreal's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

    3.    *Vocational Expert's Testimony*

Carrie Anderson testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 53-55, 62). The VE characterized Villarreal's past relevant work as a tool and die maker as skilled in nature and medium exertion per the Dictionary of Occupational Titles ("DOT") (but performed at the heavy exertional level by Villarreal). (Tr. 54). Then, the ALJ asked the VE to imagine a claimant of Villarreal's age, education, and work experience,

---

[3] In a July 5, 2011, function report, however, Villarreal indicated that he was not taking any medication for his condition. (Tr. 171).

who could perform medium work, with the following additional limitations: only frequent climbing of ramps or stairs; only occasional climbing of ladders, ropes, or scaffolds; and only occasional kneeling. (Tr. 54-55). The VE testified that the hypothetical individual would be capable of performing Villarreal's past relevant work, as it is defined in the DOT. (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Villarreal was not disabled under the Act during the relevant period of time. At Step One, the ALJ found that there was a continuous twelve-month period between August 17, 2009 and March 9, 2012, during which Villarreal did not engage in substantial gainful activity. (Tr. 18). At Step Two, the ALJ found that Villarreal had the severe impairments of right knee meniscal injury and obesity. (Tr. 18-19). At Step Three, the ALJ found that Villarreal's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (Tr. 19).

The ALJ then assessed Villarreal's residual functional capacity ("RFC"), concluding that, during the relevant period of time, he was capable of performing medium work, with the following additional limitations: standing, walking, and/or sitting for up to six hours in an eight-hour workday; only frequent climbing of ramps or stairs; only occasional climbing of ladders, ropes, or scaffolds; and only occasional kneeling. (Tr. 19-20).

At Step Four, the ALJ determined that, during the relevant time period, Villarreal was able to perform his past relevant work. (Tr. 20). As a result, the ALJ concluded that Villarreal was not disabled under the Act between August 17, 2009, and March 9, 2012. (Tr. 20-21).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

   *1.     Waiver*

It is difficult to discern Villarreal's specific arguments in support of his motion for summary judgment. His motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of his case. Villarreal does assert (in a heading in his brief) that the ALJ erred in "assessing [his] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [his] impairments." (Doc. #9 at 6). But, Villarreal does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*).

Indeed, although Villarreal provides a factual recitation of certain portions of his medical record (*id.* at 11), he does not actually allege that the ALJ erred in evaluating any of the medical evidence.[4] Villarreal's brief is nearly identical to one his counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to

---

[4] Villarreal provides the Court with nearly three pages of black letter law regarding the treating physician rule, but does not actually argue that the rule was violated here. (Doc. #9 at 12-14). His failure to even make – let alone fully develop – an argument regarding application of the treating physician rule constitutes a waiver of any argument he might otherwise have had on this issue. *See Terrell v. Comm'r of Soc. Sec.*, 2013 WL 5178541, at *9 (E.D. Mich. Sept. 10, 2013) ("[P]laintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.").

present no non-waived issue. And, on March 24, 2014, Judge Rosen issued a scathing commentary on Villarreal's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). The Court notes that Villarreal's brief in this case – which was filed <u>after</u> issuance of the *Fielder* opinion – is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Villarreal has waived any challenges he has to the ALJ's determination. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will endeavor to address the arguments alluded to – however briefly – by Villarreal.

### 2. Credibility

Apart from citing to boilerplate case law concerning the ALJ's obligations in relying on VE testimony and assessing medical source opinions – without making *any* attempt to connect that law to the facts of this case – the only "argument" Villarreal advances is that the ALJ's credibility determination was "clearly in error" because his testimony regarding his severe

8

medical impairments is "backed up by medical documentation." (Doc. #9 at 11). In making this assertion, Villarreal ignores the reasons articulated by the ALJ for discounting his credibility and does not cite any medical evidence that the ALJ failed to properly consider. As set forth below, the ALJ reasonably discounted Villarreal's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 19-20).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ adequately discussed the objective medical evidence regarding Villarreal's knee impairment. (Tr. 18-20). For example, the ALJ noted that, on May 29, 2009, Villarreal saw Paul Telehowski, M.D. (Tr. 187-89). Dr. Telehowski noted that Villarreal was "very active

9

with work" and "on his feet 8 to 10 hours a day doing fairly heavy work." (Tr. 188). On examination, Villarreal had tenderness over the medial joint line but full range of motion. (*Id.*). X-rays revealed approximately 75% joint space loss in the medial compartment, but the lateral compartment was well maintained. (*Id.*). Dr. Telehowski recommended a high tibial osteotomy. (*Id.*). As the ALJ noted, however, it was nearly one year later before Villarreal sought additional treatment for his knee, presenting to orthopedist Charles Safley, M.D., in April 2010. (Tr. 185-86). At that time, he had no effusion, but there was mild crepitus from the right knee. (*Id.*). Dr. Safley recommended over-the-counter analgesics. (Tr. 185). These essentially are the only treating physician records in the administrative record.

The ALJ also considered the report of consultative examiner Asit Ray, M.D., who examined Villarreal on September 10, 2011. (Tr. 19). Dr. Ray noted that Villarreal walked with a very slight limp but did not use an assistive device. (Tr. 193). On examination, Villarreal's right knee had normal range of motion, with very mild medio lateral instability and varus deformity. (Tr. 193-94). Dr. Ray opined that Villarreal could perform his usual and customary activities, including his occupational duties, without any restriction. (Tr. 194). The ALJ gave this opinion great weight, which Villarreal does not challenge.

In light of the foregoing evidence, the ALJ's RFC finding adequately accommodated Villarreal's knee impairment. (Tr. 19-20). The ALJ concluded that, during the relevant period of time, Villarreal was capable of performing medium work, with the following additional limitations: standing, walking, and/or sitting for up to six hours in an eight-hour workday; only frequent climbing of ramps or stairs; only occasional climbing of ladders, ropes, or scaffolds; and only occasional kneeling. (Tr. 19-20). (*Id.*). Villarreal has pointed to no evidence justifying greater limitations than those the ALJ identified.

In addition to considering the medical evidence, the ALJ noted that Villarreal's allegations of disabling limitations were not consistent with his reported daily activities, his admission that he was not taking medication for any medical condition, or his subjective representations that he remained able and willing to work during the relevant time period. (Tr. 22-23). Specifically, the ALJ noted that Villarreal reported to the consultative examiner that he was independent in his activities of daily living. (Tr. 20, 192). The ALJ also noted that in April 2010, Dr. Safley recommended only over-the-counter analgesics, and in July 2011, Villarreal reported that he was not taking any medication, neither of which is indicative of someone in debilitating pain. (Tr. 20, 171, 185). Finally, the ALJ considered the fact that Villarreal stopped working in August 2009 due to an argument with his boss, not because of his medical condition. (Tr. 20, 46). And, Villarreal applied for both jobs and unemployment benefits after his alleged onset date – representing that he was ready, willing, and able to work – which is obviously not consistent with his allegations of disabling pain. (Tr. 20, 39-42).[5] It was appropriate for the ALJ to consider these facts in assessing Villarreal's credibility. *See* 20 C.F.R. §404.1529(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *Gier v. Comm'r of Soc. Sec.*, 2009 WL 838131, at *10 (E.D. Mich. Mar. 26, 2009) (ALJ's credibility finding supported in part by lack of prescription pain medication); *Luther v. Comm'r of Soc. Sec.*, 2012 WL 3717769, at *8 (E.D. Mich. June 28, 2012) (recognizing that applications for unemployment and disability benefits are inherently inconsistent). Thus, Villarreal's own reported activities undermine his claim of disabling limitations.

In the face of all of this substantial evidence, Villarreal relies primarily on own his

---

[5] In fact, the reason Villarreal is seeking a closed period of disability benefits is that after an apparent lengthy union appeals process, he was offered his job back, and he went back to work. These circumstances belie the argument that Villarreal was "disabled" only while his union appeal was pending.

11

testimony and his subjective complaints to physicians. (Doc. #9 at 10-11). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). In sum, while Villarreal might disagree with the ALJ's credibility assessment, he has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Villarreal's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.[6]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Villarreal's Motion for Summary Judgment **[9]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED**, and this

---

[6] At one point in his brief, Villarreal asserts that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #9 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Villarreal simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [him] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Because the ALJ thoroughly reviewed and discussed the record evidence in formulating Villarreal's RFC, and in doing so expressly considered the objective medical evidence and Villarreal's daily activities, the ALJ was not required to include any additional limitations urged by Villarreal in the hypothetical question he posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that she finds credible). As such, to the extent Villarreal argues that the ALJ formed an inaccurate hypothetical, such an argument fails as well.

case be **AFFIRMED**.

| | |
|---|---|
| Dated: September 24, 2014<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2014.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
